IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CT-3050-FL

| JASON JAMAR JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| KATHRYN CHEEVER, | ) | |
| Defendant. | ) | |

The matter now comes before the court on defendant's motion for summary judgment (DE 27) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendant's motion.

**STATEMENT OF THE CASE**

On February 20, 2015, plaintiff, a state inmate, filed a hand-written complaint seeking to bring a civil rights action pursuant to 42 U.S.C. § 1983. On the same date, the clerk of court issued a notice of deficiency informing plaintiff that his complaint was not filed on the proper form for filing an action pursuant to § 1983. Plaintiff then filed his complaint on the proper form and alleged that defendants Nurse Cheever ("Cheever"), an unidentified Craven Correctional Institution Provider, and the North Carolina Department of Public Safety ("DPS") acted with deliberate indifference to a medical condition plaintiff contends began on March 9, 2012, in violation of the Eighth Amendment to the United States Constitution.[1] Plaintiff alleged that the deliberate

---

[1] In plaintiff's response to defendant Cheever's motion for summary judgment, plaintiff states that he brought this action against defendant Cheever, as well as Nurse Robert Lenn,

indifference resulted in permanent erectile damage and emotional discomfort. Plaintiff also alleged state law negligence-related claims. On April 16, 2015, plaintiff filed a motion to appoint counsel.

On October 7, 2015, the court conducted a frivolity review of plaintiff's action and dismissed without prejudice plaintiff's claims against defendants DPS, an unidentified Craven Correctional Institution Provider, and Engleman. The court, however, allowed plaintiff to proceed with his Eighth Amendment claim against defendant Cheever. The court additionally denied plaintiff's motion to appoint counsel. Then, on May 2, 2016, plaintiff filed a motion for discovery, which was fully briefed. On May 20, 2016, the court denied plaintiff's motion for discovery and directed plaintiff to make his discovery requests directly to defendant Cheever.

On September 29, 2016, defendant Cheever filed a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation against herself or any other DPS medical professional. Alternatively, defendant Cheever asserts the affirmative defense of qualified immunity. As part of her motion, defendant Cheever filed a Statement of No Material Facts, as well as an Appendix, which included the following: affidavits from defendants Cheever and Engleman as well as Kim Hodges;[2] and excerpts from plaintiff's medical records. The motion was fully briefed. As part of plaintiff's response, he attached an appendix which included the following: a personal declaration; a personal affidavit; and a grievance response.

---

Nurse Andrea Pino, and Nurse Burke. ((DE 32), p. 1). However, plaintiff did not name Nurse Robert Lenn, Nurse Andrea Pino, or Nurse Burke as defendants in his complaint or amended complaint.

[2] Kim Hodges is employed by DPS as a member of Craven Correctional Institution's management team. (Hodge's Aff. ¶ 3).

**STATEMENT OF FACTS**

Plaintiff arrived at Craven Correctional Institution ("Craven") on March 7, 2012, and was examined that same day by a practical nurse, Andrea Pino ("Pino"), after plaintiff complained of pain related to his sickle cell anemia condition.[3] (Engleman Aff. ¶ 7(b) and Ex. A). In the course of the examination, plaintiff stated that he had not received his pain medication that day. (Id.) The next day, Robert Lenn ("Lenn"), a registered nurse, saw plaintiff and noted that he was taking Naprosyn, a nonsteroidal anti-inflammatory medication for pain. (Id. ¶ 7(c) and Ex. A).

On March 10, 2012, a Saturday, plaintiff declared a medical emergency and was seen by Kathryn Burke ("Burke"), a registered nurse. (Id. ¶ 7(e) and Ex. B). In the course of the examination, plaintiff complained of pain related to his sickle cell anemia. (Id.) Plaintiff stated that he was taking Naprosyn, but requested Norco (a pain medication containing hydrocodone an opioid). Burke noted that plaintiff showed no obvious signs of discomfort, and that plaintiff had taken Advil that morning. (Id.) The nurse further noted that plaintiff spoke "quietly" and had "poor eye contact" when she attempted to get more information about plaintiff's sick cell anemia. (Id.) Burke assessed plaintiff with altered comfort related to his sickle cell anemia. (Id.) Burke ordered that plaintiff be given Naprosyn, and scheduled plaintiff to see defendant Engleman the following Monday– March 12, 2012. (Id.)

On March 12, 2012, defendant Engleman examined plaintiff, and plaintiff reported that he had a priapism[4] for the prior 48 hours. (Id. ¶ 7(f) and Ex. D). Defendant Engleman noted that

---

[3] Sickle cell anemia is an inherited medical condition in which there is insufficient healthy red blood cells to carry oxygen throughout the body. (Engleman Aff. ¶ 7(a)).

[4] A priapism is a condition where an erect penis will not return to a flaccid state. (Engleman Aff. ¶ 6).

3

plaintiff declared a medical emergency on March 10, 2012, but had not informed the nurse of his priapism. (Id.) Defendant Engleman determined that plaintiff's condition required the expertise of an urologist and ordered that plaintiff be transferred to Carolina East Medical Center ("CEMC") that same day. (Id.) At CEMC, medical staff treated plaintiff with "multiple installations of phenylephrine and Winter's shunts which provided partial detumescence, but [plaintiff] continually did not improve" and his condition persisted. (Id. ¶ 7(g) and Ex. E, p. 1). Because the initial course of treatment was unsuccessful, plaintiff had surgery to address the priapism on March 14, 2012. (Id.) Plaintiff's priapism persisted following the surgery. (Id.) As a result, plaintiff was transferred to the University of North Carolina Hospital ("UNC") Urology Clinic for further evaluation and treatment. (Id.¶ 7(h) and Ex. E, p. 2). In its preliminary report, the UNC Urology Clinic noted that plaintiff's priapism began on March 10, 2012. (Id. Ex. E, p. 1). Plaintiff received treatment at the UNC Urology Clinic and ultimately was discharged on March 21, 2012. (Id. Ex. G). After discharge, plaintiff was returned to Craven and received continued treatment for his condition. (Id. ¶ 7(j), (k) and Exs. D, H, I).

## DISCUSSION

A.	Motion for Summary Judgment

    1.	Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

    2.	Analysis

Defendant Cheever raises the affirmative defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (quotations omitted).

Assuming without deciding that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, the court focuses on the subjective prong–whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court generally may rely on medical records concerning examination and treatment of the inmate. See Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982); see also, Dulany v. Carnahan,

132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

  a.  Defendant Cheever

Defendant Cheever is the sole defendant in this action. According to plaintiff's version of the facts, he "got an erection in [his] penis that would not go down" on March 9, 2012, and was seen by defendant Cheever that same day. (Am. Compl. ¶ IV). The record, however, reflects that defendant Cheever was not at work from March 9, 2012, through March 11, 2012. (Cheever Aff. ¶ 7 and Ex. C; Hodges Aff. ¶ 5 and Ex. A). Contrary to plaintiff's allegations that his priapism began on March 9, 2012, plaintiff's medical records reflect that it began, at the earliest, on March 10, 2012–the date plaintiff declared a medical emergency and was seen by Nurse Burke, and not defendant Cheever. (Engleman Aff. Exs. D and E, p. 1).[5] Simply put, there is no evidence in the record indicating that plaintiff complained about his priapism to defendant Cheever, or that Cheever acted with deliberate indifference to plaintiff's complaints of pain. Anderson, 477 U.S. at 248 (noting that Fed. R. Civ. P. 56(e)'s provision that a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (internal quotation omitted). Thus, defendant Cheever is entitled to qualified immunity, and her motion for summary judgment is GRANTED.

---

[5] Although plaintiff alleges in response to defendant's motion for summary judgment that he reported experiencing a priapism on March 7, 2012, and March 8, 2012 ((DE 32), p. 2), there is no indication in plaintiff's medical records that he reported such condition to either nurse on those dates. (Engleman Aff. Exs. A, B).

7

b. Lenn, Pino, and Burke

Although nurses Lenn, Pino, and Burke were not named as defendants in this action, the court, acting in an abundance of caution, examines whether these nurses acted with deliberate indifference to plaintiff's priapism. As stated, plaintiff's medical records reflect that he first experienced the priapism on March 10, 2012. (Engleman Aff. Exs. D and E, p. 1). The only nurse to see plaintiff between the dates of March 10, 2012, and March 12, 2012 (the date he was transferred to the hospital), was Burke on March 10, 2012. (Engleman Aff. Ex. B). Plaintiff's medical records further reflect that he did not report his priapism when he saw Burke on March 10, 2012, or otherwise complain about the priapism until he saw Engleman on March 12, 2012. (Id. Exs. B, D). Although plaintiff disputes the accuracy of his medical records with respect to the date he reported the priapism, the court rejects as unreasonable the inference that hospital personnel fabricated plaintiff's medical records. Cf., e.g., Matsushita, 475 U.S. at 587 (court draws all reasonable inferences in non-movant's favor); Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) (summary judgment should be granted where there is not either direct or circumstantial evidence "of sufficient probative force to reflect a genuine dispute of material fact"). Thus, there is no evidence to suggest that nurses Lenn, Pino, or Burke knew of and ignored plaintiff's priapism.

As for plaintiff's complaints of pain on March 10, 2012, the record reflects that plaintiff was provided Naprosyn and Advil to relieve his pain. (Id. Exs. A, B). Burke, additionally, referred plaintiff to defendant Engleman in response to plaintiff's complaints that the Naprosyn was not adequate to treat plaintiff's pain. (Id. Ex. B). Plaintiff's disagreement with the treatment he received is not actionable pursuant to § 1983. Russell, 528 F.2d at 319; Wright v. Collins, 766 F.2d

841, 849 (4th Cir. 1985) (citation omitted) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Further, any mistakes of medical judgment are not actionable pursuant to § 1983. See Estelle, 429 U.S. at 107; see also, Hernandez v. Lewis, No. 5:10–CT–3046–D, 2012 WL 174400, at *3 (E.D.N.C. Jan.20, 2012) ("Hernandez's allegation concerning his request for orthopedic shoes amounts to nothing more than a disagreement over the proper course of treatment."). The fact that the treatment plaintiff received may not have been effective does not give rise to a constitutional violation either. See e.g., Russell, 528 F.2d at 319; see also, Johnson, 145 F.3d at 167 (finding that negligent acts are not sufficient to establish a constitutional violation). Finally, plaintiff has not presented any evidence to establish that any member of the Craven medical staff acted with deliberate indifference to his priapism. See Matsushita, 475 U.S. at 587.

Because there is no evidence in the record that any member of the Craven medical staff actually knew of and disregarded any medical need, plaintiff has not established the second prong of the Eighth Amendment test. Based upon the foregoing, the court finds that plaintiff fails to satisfy the subjective prong of the Eighth Amendment test, and is unable to establish a constitutional violation.

B.  State Law Claims

A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 F. App'x 141

(4th Cir. 2003). The court has dismissed plaintiff's federal claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.

## CONCLUSION

In summary, defendant's motion for summary judgment (DE 27) is GRANTED, and plaintiff's state law negligence claims are dismissed without prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 12th day of June, 2017.

                                                         _____
                                                         LOUISE W. FLANAGAN
                                                         United States District Judge